1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORACE CHESTER BROWN, JR., and SHEILA BROWN, | CASE NO. 1:12-cv-01597-AWI-SMS |
| Plaintiffs, | ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM WITH LEAVE TO AMEND WITHIN THIRTY DAYS |
| v. | |
| FRESNO UNIFIED SCHOOL DISTRICT, | |
| Defendant. _____ / | (Docs. 1 and 5) |

### Screening Order

Plaintiffs Horace Chester Brown, Jr., and Sheila Brown, proceeding *in forma pauperis*, filed their complaint on September 26, 2012.[1]  Because Plaintiff's complaint fails to state a claim upon which relief can be granted, 28 U.S.C. § 1915(e)(2)(B)(ii) requires this Court to dismiss it. This order grants Plaintiff thirty days in which to amend his complaint to state a claim for which relief may be granted (a "cognizable claim").

### I.   Screening Requirement

The statutory privilege of proceeding *in forma pauperis* is a privilege, not a right. *Williams v. Field*, 394 F.2d 329, 332 (9th Cir.), *cert. denied*, 393 U.S. 891 (1968); *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir.), *cert. denied,* (1965).  "Indigence does not create a constitutional right to the expenditure of public funds and the valuable time of the courts in order to prosecute an action which is totally without merit."  *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984).  Accordingly, the statute requires the Court to screen any case in which a

---

[1] References to "Plaintiff" in this action refer only to Plaintiff Horace Chester Brown, Jr.  *See also* Section IV below.

1

1  plaintiff proceeds *in forma pauperis*, as provided in 28 U.S.C. § 1915.  A court must dismiss any

2  case, regardless of the fee paid, if the action or appeal is (1) frivolous or malicious; (2) fails to

3  state a claim on which relief may be granted; or (3) seeks monetary relief from a defendant who

4  is immune from such relief.  28 U.S.C. § 1915 (e)(2)(B).

5  **II.    Summary of Alleged Facts**

6         Plaintiff, born March 15, 1956, was previously employed as a custodian by Defendant

7  Fresno Unified School District Educational Facilities Corporation.  He was a member of  the

8  Service Employees International Union (SEIU) and subject to the terms of a collective bargaining

9  agreement.  In addition to his regular employment health coverage, Plaintiff subscribed to

10  voluntary subsidized disability coverage through American Fidelity Assurance Company, which

11  was owned by Fresno Unified School District.

12         Beginning in 1999, Plaintiff suffered from "Intractable and Chronicle Hiccups."[2]  On

13  March 1, 2011, Plaintiff's physician, gastroenterologist Rahim Raoufi, M.D., notified

14  Defendant's human resources department that Plaintiff required certain working conditions as a

15  result of his medical condition.[3]  Dr. Raoufi apparently recommended Plaintiff's use of a face

16  mask and limited contact with dust and various cleaning products while he performed his job.

17  Defendant did not modify Plaintiff's working conditions.

18         Also on March 1, 2011, University Central Medical Specialty Center, for which Dr.

19  Raoufi worked, faxed to Defendant's disability benefits department a physician's statement

20  indicating that Plaintiff was unable to work in any occupation from October 13, 2010, through

21  July 11, 2011.  The physician's statement indicated that Plaintiff's Intractable and Chronicle

22  Hiccups caused difficulty in speaking, eating, breathing, and concentrating at work.

23         On March 24 and 31, 2011, Plaintiff and Mrs. Brown met with Defendant's job

24  modification committee, where they were informed that Plaintiff needed to work thirty more days

25

26         [2] Although the Court questions whether Plaintiff intended to refer to "intractable and *chronic* hiccups," it

27  will use Plaintiff's terminology in this order.

28         [3] The complaint also includes an allegation referring to a letter dated February 22, 2012.  The Court is
   unable to determine whether Dr. Raoufi wrote two letters or whether one of the dates is inaccurate.

as a custodian to qualify for retirement.  Information they received from the California Public

Employee Retirement System (CalPERS), however, indicated that Plaintiff already had sufficient

work credit years to retire.

On April 8, 2011, Plaintiff had surgery on the right and left side of his phrenic nerve

block (neck and throat) and front chest area.  Plaintiff returned to work to complete the required

thirty days of employment.  On April 12, 2011, Plaintiff suffered a stroke while at work.

According to Plaintiff, his job was terminated without his knowledge on April 12, 2011.

He alleges that he received no written or oral termination notice and did not submit a resignation

letter to Defendant or SEIU.  On May 20, 2011, Defendant sent Plaintiff a letter stating that as of

April 13, 2011, he had been placed on its re-employment list.  The letter further indicated that

Plaintiff had exhausted all of his paid and unpaid leaves of absence.  Nonetheless, from April 13

through September 24, 2011, Plaintiff believed that he was still employed by Defendant.

Between September 29 and October 14, 2011, Plaintiff discovered that Defendant had

terminated his employment.  He filed a grievance for wrongful termination discrimination,

disability discrimination, and retaliation with EEOC.  On November 29, 2011, he filed

grievances with the California Department of Fair Employment and Housing.[4]

Plaintiff alleges that Defendant provided different information to Plaintiff, Fidelity, and

the EDD office.[5]  Defendant advised Plaintiff that he was on R-39 status.[6]  Defendant advised

EDD that Plaintiff was still employed and receiving full wages.  Defendant advised Fidelity that

Plaintiff had resigned.

On July 23, 2011, CalPERS provided Plaintiff with retirement estimation information as

of July 23, 2011.  It indicated that if Plaintiff retired as of April 14, 2011, at the age of 55 years,

he would have 10.604 total years of service credit with final compensation of $2817.40 monthly.

///

---

[4] The complaint does not report the outcome of these grievances.  The amended complaint should do so.

[5] The complaint does not identify "the EDD office" other than by its acronym.

[6] The amended complaint should define "R-39 status."

1    On February 1, 2012, EDD mailed Plaintiff a redetermination letter advising Plaintiff

2    that, since it could not establish that Defendant continued to pay Plaintiff, Plaintiff was eligible

3    for disability insurance beginning November 1, 2011.

4    On March 15, 2012, Plaintiff forwarded for Defendant's endorsement the documentation

5    for disability retirement required by CalPERS.  Defendant did not endorse these forms, although

6    its endorsement was required to allow Plaintiff to begin processing his application.  When

7    Defendant was unresponsive to Plaintiff's repeated requests by letter and personal visits that it

8    sign and release the requisite forms, Fidelity inquired on Plaintiff's behalf.

9    On June 19, 2012, Plaintiff suffered another stroke.

10   In July 2012, Fidelity advised Plaintiff that he needed to go to Defendant's payroll

11   department to have the CalPERS forms signed.  Although Plaintiff continued to attempt to do so,

12   Defendant repeatedly cancelled appointments and referred Plaintiff to individuals who were not

13   authorized to endorse the papers.

14   On an unspecified date at Bethune Elementary School, Plaintiff overheard his supervisor,

15   who was discussing Plaintiff's job duties with someone, state, referring to Plaintiff, "I will pencil

16   whoop him."

**III.    Cognizable Claim**

18   In determining whether a complaint fails to state a cognizable claim, a court applies

19   substantially the same standard applied in motions to dismiss pursuant to F.R.Civ.P. 12(b)(6).

20   *Gutierrez v. Astrue*, 2011 WL 1087261 at *1 (E.D.Cal. March 23, 2011) (No. 1:11-cv-00454-

21   GSA).  "The focus of any Rule 12(b)(6) dismissal . . . . is the complaint."  *Schneider v.*

22   *California Department of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998).  A court must

23   dismiss a complaint, or portion of a complaint, for failure to state a claim upon which relief can

24   be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his

25   or her claim(s) that would entitled the plaintiff to relief.  *Hishon v. King & Spalding*, 467 U.S.

26   69, 73 (1984).  When a court reviews a complaint under this standard, it must accept as true the

27   complaint's allegations (*Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740

28   (1976)), construe the pleadings in the light most favorable to the plaintiff (*Resnick v. Hayes*, 213

4

F.3d 443, 447 (9th Cir. 2000)), and resolve all doubts in the plaintiff's favor (*Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).

### A.   Short and Plain Statement

The sufficiency of a complaint is first determined by referring to F.R.Civ.P. 8(a) which requires that a civil complaint contain:

(1)   a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2)   a short and plain statement of the claim showing the pleader is entitled to relief; and

(3)   a demand for the relief sought which may include relief in the alternative or different types of relief.

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). The complaint must "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

### B.   Principles of Pleading

#### 1.   Factual Allegations and Legal Conclusions

Determining a complaint's sufficiency invokes two underlying principles of pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). First, the Court must accept as true the well-pleaded factual allegations of the complaint. *Twombly*, 550 U.S. at 555. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Plaintiff must set forth sufficient factual matter accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 677, *quoting Twombly*, 550 U.S. at 555.

Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (*citations omitted*). A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555-56

5

(*internal quotation marks and citations omitted*).  In this case, Plaintiff clearly labeled his claims but failed to provide sufficient factual allegations to allow the Court to evaluate whether the claims are cognizable.

While factual allegations are accepted as true, legal conclusions are not.  *Iqbal*, 556 U.S. at 678.  A court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.*  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A legal conclusion is a statement such as: "The defendant has breached EEOC laws." Reaching a legal conclusion is the Court's job.  The complaint should allege facts supporting each element of the claim so that the Court can reach a legal conclusion.  A fact is a statement such as: "Employer advertised a supervisory job in March 1980"; "Plaintiff was diagnosed with multiple sclerosis in August 1991"; or "Plaintiff requires headphones to hear the telephone."

### 2.    Plausible Claim for Relief

The second underlying principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679.  To permit the Court to determine that a complaint states a plausible claim for relief, based on the reviewing court's judicial experience and common sense, the well-pleaded facts must permit the court "to infer more than a mere possibility . . . . 'that the pleader is entitled to relief.'"  *Id.*, *quoting* F.R.Civ.P. 8(a)(2).  The Supreme Court explained:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

### C.    Plaintiff's Complaint

Because the complaint is difficult to follow, uses terminology unfamiliar to the Court, and is incomplete, the Court's screening is necessarily incomplete and may include inaccuracies.

1    In addition to addressing the substantive matters discussed below, Plaintiff should endeavor to

2 clearly identify the dates on which alleged occurrences took place, organizing his factual

3 allegations chronologically.  He must not assume that the Court is familiar with acronyms or

4 special terminology used by his employer or in his field of work.  His factual allegations must be

5 sufficiently detailed to allow the Court and the defendant(s) to fully understand the incidents that

6 he describes.  References to the plaintiff or defendant must be accurate; for example, did Plaintiff

7 mean to allege at Doc. 1, page 18, that "plaintiff" breached EEOC rules?

8    Although Plaintiff has an unqualified right to bring his case on his own behalf (*pro se*), he

9 should carefully consider whether he wishes to obtain legal assistance or consultation before

10 proceeding.  "Pro se representation . . . . imposes burdens not only on the pro se party but also on

11 the opposing party and the decision maker."  *Santaglia v. Sun Microsystems, Inc.*, 9 OCAHO

12 1097, 2003 WL 21214655 at * 4 (O.C.A.H.O. May 1, 2003) (No. 03B00008).  Because *pro se*

13 plaintiffs are unfamiliar with the substantive and procedural demands of litigation, their complex

14 claims, such as those relating to disability discrimination or collective bargaining agreements, are

15 often subject to delays and misunderstandings as well as problems relating to case management.

16 *Id.*  Plaintiff is reminded that a prevailing plaintiff in an ADA case is generally entitled to recover

17 attorneys' fees unless special circumstances would make such an award unjust.  *Jankey v. Poop*

18 *Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008).

19    The Court also acknowledges that Plaintiff has appended to the complaint an exhibit list

20 in chronological order.  Attaching such a list to the complaint is neither required nor desirable.

21 Instead, Plaintiff should use these documents as sources of the facts that he needs to incorporate

22 into his claims, retaining the documents for use in later stages of the litigation process.

23 **IV.**   <u>**Mrs. Brown**</u>

24    A lawsuit must be prosecuted by the real party in interest.  F.R.Civ.P. 17 (a)(1).  Because

25 Mrs. Brown is neither a party to the collective bargaining agreement nor a person for whose

26 benefit it was made, she cannot bring an action to enforce its terms.  F.R.Civ.P. 17(a)(1)(F).

27    Nor does Mrs. Brown have standing with regard to Plaintiff's ADA or related statutory

28 claims.  The wife of an employee is outside of  the "zone of interest" contemplated by the ADA

and thus, lacks standing to raise ADA claims against her husband's employer. *Foote v. Folks, Inc.*, 864 F.Supp. 1327, 1329 (N.D. Ga. 1994). This is true even when the wife is a beneficiary under the defendant's benefits plan. *Id.* Accordingly, Mrs. Brown is not properly included as a plaintiff in this action.

The complaint also includes the following language:

> Due to severe medical conditions if in case of inability [*sic*] to competently move forward in this case I–Horace Brown–Plaintiff ask the court to accept my spouse, Sheila Brown –Plaintiff signature of additional filed documents with this court pertaining to this case signed in my behalf.

Doc. 1 at 25.

Neither Plaintiff nor his wife is an attorney. Plaintiff has elected to proceed without counsel. A non-attorney proceeding *pro se* may bring his or her own claims to court but may not represent others. *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997); *C. E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987). Whether or not she is named as a plaintiff, Mrs. Brown may not represent her husband in this action. Accordingly, this Court may not accept documents that Mrs. Brown has signed on Mr. Brown's behalf. To the extent that Mr. Brown has concerns regarding his physical or mental ability to prosecute his claims, he is encouraged to consult an attorney.

## V.    Breach of Contract

Plaintiff claims that Defendant breached the collective bargaining contract between Fresno Unified School District and SEIU, specifically Articles 4 (California State Disability Insurance), 5 (Complaint Procedures), 11 (Employee Expenses and Materials), Article 15 (Grievance Procedures), 18 (Leave Provisions), 20 (Nondiscrimination), 28 (Safety Conditions: section six), 30 (Health and Welfare Benefits: section seven (Retiree Benefits)), 32 (Seniority and Order of Layoff: Notice of Layoff (30 days)), and 36 (Transfer: section three (medical)), as well as numerous provisions of the employee manual. Because Plaintiff neither alleges the content of the provisions of the collective bargaining agreement or the employee manual nor alleges any facts supporting a finding that Defendant breached of any of the listed provisions, this claim is not cognizable.

1    The paucity of factual allegations means that the Court cannot offer any further guidance

2    to Plaintiff as to how he should proceed in amending this claim.  This claim raises numerous

3    questions, including but not limited to whether Plaintiff has standing to bring an individual action

4    for breach of contract of a collective bargaining agreement, whether Plaintiff has pursued all

5    grievance procedures required by the collective bargaining agreement, and whether Plaintiff's

6    separation from employment met the contractual definition of a lay-off.  If Plaintiff elects to

7    amend this claim, the amended complaint must set forth detailed allegations of the contract's

8    provisions and factual allegations sufficient to support a conclusion that Defendant breached

9    those provisions.  In light of the potential complexity of this claim, Plaintiff may wish to consult

10   his union representatives or an attorney.

11   The Court also notes that Plaintiff alleges that he was a "[p]revious union member" of

12   SEIU.  Doc. 1 at 3.  The amended complaint should modify this allegation to address whether

13   Plaintiff was a union member at the time of the incidents giving rise to his breach of contract

14   claims.

15   **VI.   <u>Americans With Disabilities Act</u>**

16   In pleading his various claims, Plaintiff assumes that he is disabled as a result of his

17   intractable and chronicle hiccups.  To prove that he is disabled for purposes of the Americans

18   With Disabilities Act, Plaintiff must allege facts to support a finding that he is disabled as the

19   Act defines it: (1) he has a physical or mental impairment that substantially limits one or more of

20   his major life activities; (2) he has a record of an impairment; or (3) that he is regarded as having

21   such an impairment.  42 U.S.C. § 12102 (2).

22   Under certain circumstances, the Americans With Disabilities Act requires the employer

23   of a disabled worker to make reasonable accommodations, either by making existing facilities

24   accessible or by restructuring the job or how it is done to enable the worker to perform the job.

25   *See* 42 U.S.C. § 12111(9). Although refusal to make a reasonable accommodation is not among

26   the enumerated claims, the complaint appears to allege that Defendant refused to provide

27   reasonable accommodations to Plaintiff in the form of a mask and limited exposure to dust and

28   certain cleaning products.  It notes at least two accommodation conferences between Defendant

1   and Plaintiff and his wife.  If Plaintiff intends to assert a claim that Defendant failed to provide

2   reasonable accommodation, the amended complaint should clearly identify it and allege

3   sufficient facts to support it.

4   **VII.   Discrimination**

5          To establish a common law cause of action for discrimination, Plaintiff must allege the

6   elements of a prima facie claim: (1) Plaintiff was a member of a protected class; (2) he was

7   performing competently in the position he held; (3) he suffered an adverse employment action

8   such as termination, demotion, or denial of a promotion, and (4) the circumstances suggest a

9   discriminatory motive.  *Chuang v. University of California Davis, Board of Trustees*, 225 F.3d

10  1115, 1123-24 (9th Cir. 2000); *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993);

11  *Sneddon v. ABF Freight Systems*, 489 F.Supp.2d 1124, 1129 (S.D.Cal. 2007); *Brandon v. Rite*

12  *Aid Corp., Inc.*, 408 F.Supp.2d 964, 973 (E.D.Cal. 2006); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th

13  317, 355 (2000).  A plaintiff bears the initial burden of demonstrating actions by the employer

14  which a fact finder could conclude were more likely than not based on an impermissible

15  discriminatory criterion.  *Clark v. Claremont University Center*, 6 Cal.App.4th 639, 663 (1992).

16         As presently written, the complaint merely alleges Plaintiff's physical condition and his

17  discharge from employment.  The amended complaint should allege the relevant facts in greater

18  detail and must tie Plaintiff's physical condition to Defendant's discharging him from

19  employment.

20  **VIII.   Wrongful Termination**

21         "Apart from the terms of an express or implied employment contract, an employer has no

22  right to terminate employment for a reason that contravenes fundamental public policy as

23  expressed in a constitutional or statutory provision."  *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th

24  1238, 1252 (1994).  "[A]n employer's discharge of an employee in violation of a fundamental

25  public policy embodied in a constitutional or statutory provision gives rise to a tort action."

26  *Cabasuela v. Browning-Ferris Industries of Cal., Inc.*, 68 Cal.App.4th 101, 107 (1998); *Barton*

27  *v. New United Motor Manufacturing, Inc.*, 43 Cal.App.4th 1200, 1205 (1996); *Turner*, 7 Cal.4th

28  at 1252.  This tort typically arises when an employer retaliates against an employee for (1)

refusing to violate a statute, (2) performing a statutory obligation, (3) exercising a statutory right or privilege, or (4) reporting an alleged violation of a statute of public importance. *Cramer v. Consolidated Freightways, Inc.*, 209 F.3d 1122, 1134 (9th Cir. 2000).

To establish a tort claim for wrongful termination in violation of public policy, a Plaintiff must establish (1) an employer-employee relationship; (2) termination or other adverse employment action; (3) the termination or adverse action was a violation of public policy; (4) the termination or adverse action was a legal cause of Plaintiff's damages; and (5) the nature and extent of the damages. *Holmes v. General Dynamics Corp.*, 17 Cal. App.4th 1418, 1426 n. 8 (1993). Violations of the Fair Employment and Housing Act (FEHA) (California Government Code § 12940 *et seq.*) and policies against race, gender, age, and disability discrimination support wrongful termination claims. *City of Moorpark v. Superior Court*, 18 Cal.4th 1143, 1160-61 (1998) (addressing disability discrimination); *Stevenson v. Superior Court*, 16 Cal.4th 880, 896 (1997) (addressing age discrimination).

Plaintiff alleges that he was wrongfully terminated (1) in that he was given no notice of termination or warnings of poor performance, and (2) as a result of Defendant's intent to avoid paying him retirement or unemployment benefits. Plaintiff's allegations that Defendant failed to provide appropriate notice, presumably as required pursuant to the collective bargaining agreement, are immaterial to this tort, although they may be relevant to the breach of contract claim. If Plaintiff intended his allegations of insufficient notice to indicate that he had no reason to believe that his work was other than satisfactory, the amended complaint should set forth relevant facts more clearly.

If Defendant discharged Plaintiff due to his disability or to avoid payment of unemployment or retirement benefits to which Plaintiff was entitled, Plaintiff may be able to state a cognizable claim for wrongful termination in contravention of public policy. To do so, he must first allege facts sufficient to establish that he was actually or constructively discharged. He must specifically identify the public policy violated by his termination and allege sufficient facts to tie the violation of the public policy to his termination.

///

IX.    **Retaliation**

To establish a prima facie case of retaliation, a plaintiff must allege that (1) he or she engaged in protected activity; (2) he or she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the employment decision. *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003); *Morgan v. Regents of University of California*, 88 Cal.App.4th 52, 69 (2000); *Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 615 (1989).  In California, the FEHA makes it unlawful for any employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  Cal. Gov't Code § 12940(h).  To allege a violation of the FEHA by retaliation, a plaintiff must allege that he engaged in a protected activity, that his employer subjected her to an adverse employment action, and that a causal link existed between the protected activity and the adverse action.  *Yankowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042 (2005).

"To establish causation, the plaintiff must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the adverse employment decision and that but for such activity the decision would not have been made."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).  "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [plaintiff] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989), *quoting Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  "[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Passantino v. Johnson & Johnson Consumer Products*, 212 F.3d 493, 507 (9th Cir. 2000).

The complaint does not allege any facts suggesting that Defendant retaliated against Plaintiff for engaging in protected action.  To allege a cognizable claim, the amended complaint should set forth facts sufficient to establish each element of retaliation.

1    **X.      Hostile Working Environment**

2          To establish a cause of action for hostile work environment, Plaintiff must establish that

3    he was harassed on the basis of his disability, that the harassment was unwelcome, and that the

4    harassment was "sufficiently severe or pervasive to alter the conditions of [his] employment and

5    create an abusive work environment." *See Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir.

6    1998); *Aguilar v. Avis Rent a Car Systems*, 21 Cal.4th 121, 130 (1999), *cert. denied*, 529 U.S.

7    1138 (2000) (*internal quotations omitted*).   "The more outrageous the conduct, the less

8    frequent[ly] it must occur to make a workplace hostile." *Fuller v. City of Oakland*, 47 F.3d 1522,

9    1527 (9th Cir. 1995).   "An employer is strictly liable for harassment committed by its agents or

10   supervisors . . . ." *Jones v. Department of Corrections & Rehabilitation*, 152 Cal.App.4th 1367,

11   1377 (2007).

12         The complaint alleges a single incident of alleged harassment: Plaintiff's supervisor

13   telling someone else that he would "pencil whoop" Plaintiff.[7]   A single incident is not usually

14   sufficient to prove harassment.   "[W]hen the harassing conduct is not severe in the extreme, more

15   than a few isolated incidents must have occurred to prove a hostile work environment based on

16   working conditions." *Lyle v. Warner Brothers Television Productions*, 38 Cal.4th 264, 284

17   (2006).   The plaintiff must "show a concerted pattern of harassment of a of a repeated, routine, or

18   a generalized nature." *Id.*   A plaintiff cannot establish the pervasive harassment necessary to

19   prevail on a hostile work environment claim if the harassment is only "occasional, isolated,

20   sporadic or trivial." *Id.*   "Simple teasing, offhand comments, and isolated incidents (unless

21   extremely serious)" are not sufficient to establish a cause of action. *Mokler v. County of Orange*,

22   157 Cal.App.4th 121, 142 (2007).   Behavior may be rude, inappropriate or offensive without

23   rising to the level necessary to establish a hostile work environment. *Id.* at 144-45.   "To be

24   actionable, . . . a workplace must be permeated with discriminatory intimidation, ridicule and

25   insult." *Hope v. California Youth Authority*, 134 Cal.App.4th 577, 589-90 (2005).   It must be

26

27 _____

28          [7]   The Court is unfamiliar with the term "pencil whoop."   For purposes of this screening order only, the Court will accept Plaintiff's assumption that this is a denigrating or hostile comment.   The amended complaint must explain the meaning of the term and allege facts providing the context for the remark.

1   "both objectively and subjectively offensive, one that a reasonable person would find hostile or

2   abusive, and one that the victim did in fact perceive to be so." *Erdmann v. Tranquility Inc.*, 155

3   F.Supp.2d 1152, 1159 (N.D.Cal. 2001), *quoting Faragher v. City of Boca Raton*, 524 U.S. 775,

4   786 (1998).

5          As was the case with Plaintiff's discrimination claim, the allegations comprising this

6   claim must be supplemented to allege facts indicating that the supervisor's verbal misconduct

7   related to Plaintiff's disability.  The complaint must also include specific factual allegations to tie

8   the supervisor's verbal misconduct to Plaintiff's discharge and to Plaintiff's alleged damages.

9          The Court is unable to determine whether Plaintiff intended this claim to also allege a

10  claim for harassment.  Under the FEHA, it is unlawful for an employer to harass any employee

11  based on physical disability, among other categories.  Cal. Gov't Code § 12940(j)(1).

12  Harassment is distinct from discrimination.  *Janken v. GM Hughes Electronics*, 46 Cal.App.4th

13  55, 64-65 (1996).  To allege a prima facie case of harassment, Plaintiff must allege that he was

14  subject to a hostile work environment based on his physical disability included within the statute,

15  and that the harassment was sufficiently pervasive to alter the conditions of her employment and

16  create an abusive work environment.  *Doe v. Capital Cities*, 50 Cal.App.4th 1038, 1045 (1996).

17         "[H]arassment consists of conduct outside the scope of necessary job performance,

18  conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for

19  other personal motives."  *Janken*, 46 Cal.App.4th at 63.  Harassment may be distinguished from

20  legitimate personnel decisions such as hiring and firing, job or project assignments, office or

21  work station assignments, promotion or demotion, performance evaluations, provision of

22  support, assignment or non-assignment of supervisory responsibility, deciding who will or will

23  not attend meetings, determination of employees to be laid off, and the like.  *Janken*, 46

24  Cal.App.4th at 64-65.  An employer is strictly liable for a supervisor's harassment of an

25  employee.  *State Dep't of Health Services v. Superior Court*, 31 Cal.4th 1026, 1041 (2003).  A

26  cognizable harassment claim requires Plaintiff to allege his inclusion in a protected group and to

27  tie his supervisor's actions to Plaintiff's disability.  If Plaintiff intended to allege a claim for

28  ///

harassment, the amended complaint must clearly say so and allege sufficient facts to establish its elements.

**XI.   Negligence**

The common law claim of negligence denotes common carelessness. *Black's Law Dictionary* at 1061 (8th ed. 1999).  It is the "failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm, except for conduct that is intentionally, wantonly, or willfully disregardful of others' rights." *Id.*  It does not contemplate intentional wrongdoing. *Id.* at 1062, *quoting* W. Page Keeton, et al., *Prosser and Keeton on* the Law of Torts § 28 at 161 (5th ed. 1984).  In California, the elements of a negligence claim are (1) the existence of a duty to exercise due care; (2) breach of that duty, (3) causation, and (4) damages. *Ruiz v. Gap, Inc.*, 380 Fed. Appx. 689, 691 (9th Cir. 2010).

Plaintiff alleges that Defendant was negligent in providing accurate information to Plaintiff, American Fidelity Insurance Company, and EDD, resulting in delay or denial to Plaintiff of unemployment insurance and disability benefits.  To the extent that Plaintiff contends that Defendant's negligence was intentional, whether his true intent was to allege "negligence" is not clear.  If Plaintiff intended to allege negligence as an alternative claim to his claims of intentional wrongdoing, he must modify the allegations of this claim to conform to applicable negligence law.

**XII.   Defendant's Motion to Dismiss**

The order granting Plaintiff's motion to proceed *in forma pauperis* stated,"[T]he Court does not direct that service be undertaken until the Court screens the complaint in due course and issues its screening order."  Doc. 3.  Plaintiff nonetheless proceeded to serve Defendant, which has filed a motion to dismiss.  In light of this order, which dismisses the complaint for failure to state a claim, Defendant's motion to dismiss is moot.

**XIII.   Conclusion and Order**

The purpose of the complaint is to briefly and plainly allege facts supporting the plaintiff's claims.  Plaintiff's amended complaint should do so.

Because the complaint fails to allege facts sufficient to state a claim upon which relief can be granted, this Court will dismiss it. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.  Plaintiff must revise his complaint to allege facts sufficient to support a cognizable claim.

Plaintiff's amended complaint should be brief, but must allege sufficient facts to establish each cause of action (claim). Fed. R. Civ. P. 8(a).  Plaintiff should focus on setting forth, as briefly but specifically as possible, the facts necessary to state a claim on which relief may be granted.

Plaintiff is advised that an amended complaint supercedes all prior complaints, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *aff'd*, 525 U.S. 299 (1999); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading."  Local Rule 15-220.  "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  *King*, 814 F.2d at 567; *accord Forsyth*, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.    Plaintiff's complaint is dismissed with leave to amend for failure to allege facts sufficient to state a claim on which relief may be granted;

2.    Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order;

3.    If Plaintiff fails to file an amended complaint within **thirty (30) days** from the date of service of this order, this action will be **dismissed with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim; and

4.    Defendant's motion to dismiss (Doc. 5) is dismissed as moot.

IT IS SO ORDERED.

**Dated:    October 30, 2012**                          **/s/ Sandra M. Snyder**
                                                                            UNITED STATES MAGISTRATE JUDGE