1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORACE CHESTER BROWN, JR., | CASE NO. 1:12-cv-01597-AWI-SMS |
|         Plaintiff, | ORDER DISMISSING AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM WITH LEAVE TO AMEND WITHIN THIRTY DAYS |
|     v. | |
| FRESNO UNIFIED SCHOOL DISTRICT, | |
|         Defendant. | (Doc. 9) |

_____/

## Second Screening Order

Plaintiffs Horace Chester Brown, Jr., and Sheila Brown, proceeding *in forma pauperis*, filed their complaint on September 26, 2012. Because Plaintiffs' complaint failed to state a claim upon which relief can be granted, the Court dismissed it, as required by 28 U.S.C. § 1915(e)(2)(B)(ii), granting leave to amend within thirty days. On December 27, 2012, Plaintiff Horace Chester Brown filed the first amended complaint.

## I.    Screening Requirement

The statutory privilege of proceeding *in forma pauperis* is a privilege, not a right. *Williams v. Field*, 394 F.2d 329, 332 (9th Cir.), *cert. denied*, 393 U.S. 891 (1968); *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir.), *cert. denied,* (1965). "Indigence does not create a constitutional right to the expenditure of public funds and the valuable time of the courts in order to prosecute an action which is totally without merit." *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). Accordingly, the statute requires the Court to screen any case in which a plaintiff proceeds *in forma pauperis*, as provided in 28 U.S.C. § 1915. A court must dismiss any case, regardless of the fee paid, if the action or appeal is (1) frivolous or malicious; (2) fails to

1

1  state a claim on which relief may be granted; or (3) seeks monetary relief from a defendant who

2  is immune from such relief.  28 U.S.C. § 1915 (e)(2)(B).

3  **II.    Summary of Alleged Facts**

4          In his first amended complaint, Plaintiff has substantially changed the facts from those

5  alleged in the original complaint.  Accordingly, this screening memo must re-state the summary

6  of alleged facts.  As set forth in the complaint, the facts are internally contradictory and

7  frequently inconsistent.  As a whole, Plaintiff's story does not "hang together" and requires the

8  reader to make illogical leaps from one occurrence to others that are seemingly unrelated.

9          Plaintiff (born March 15, 1956) began work as a custodian for Defendant on June 21,

10 1999.  While employed by Defendant, Plaintiff was a member of Service Employees

11 International Union (SEIU) and subject to the terms of a collective bargaining agreement.

12 Plaintiff's compensation included medical insurance.  Plaintiff also purchased through Defendant

13 subsidized disability insurance from American Fidelity Insurance Company.  Defendant owns

14 American Fidelity Insurance Company.

15         On or about March 1, 2000, Plaintiff began to show symptoms of severe acid reflux,

16 tightened chest and airways, gagging, and signs of heart attacks.  On or about May 1, 2000,

17 Plaintiff had his first appointment with his primary care physician, Dr. Sandhu at Northwest

18 Medical Group.  Plaintiff saw Dr. Sandhu monthly from May 1, 2000, through May 1, 2006.

19 Plaintiff always notified Defendant of his absences for doctors' appointments, first exhausting his

20 sick and vacation days to do so, and eventually taking time off without pay.

21         Dr. Sandhu was not able to diagnose Plaintiff's condition and allowed Plaintiff to

22 continue to work for Defendant with no special accommodations.  When Dr. Sandhu retired in

23 April 1, 2006, he referred Plaintiff to Dr. Gurdeep Dillon, who became Plaintiff's new primary

24 care physician.  Dr. Gurdeep Dillon referred Plaintiff to a digestive specialist, Dr. Ulysses Dillon.

25         Marvin James[1] became Plaintiff's supervisor at Edison-Bethune Elementary School when

26 James's predecessor retired.  Plaintiff and James had an amiable relationship until May 2007,

27 _____

28         [1] The complaint refers to Plaintiff's former supervisor as both "James Marvin" and "Marvin James."  The Court is unable to determine which alternative is correct.

1    when James directed Plaintiff to clean bathroom walls with a combination of bleach and

2    ammonia.  Plaintiff contends that this using this procedure created mustard gas, which impaired

3    his ability to breathe and required him to periodically step out of the bathroom. Exposure to the

4    gas aggravated his medical condition and made his severe hiccups chronic.

5        Beginning in mid-May 2007, cleaning supplies at Edison-Bethune began to disappear.

6    Jean Anderson, who was Edison-Bethune's financial manager and who was responsible for

7    approving all supply orders, noted that excessive orders were being submitted.  Plaintiff

8    attributes the hazardous procedures implemented for bathroom cleaning to the shortage of

9    cleaning supplies.  After Anderson questioned James, James directed Plaintiff and another

10   custodian to sign for all supply deliveries and to pick up supplies from Defendant's warehouse.

11   On or about June 1, 2007, after observing James loading supplies into his personal vehicle,

12   Plaintiff refused to sign further supply orders.  James threatened to report Plaintiff to Defendant's

13   Board of Directors if he continued to refuse to sign.  At about the same time, James increased the

14   number and difficulty of rooms assigned for cleaning by Plaintiff and the frequency with which

15   cleaning was required.

16       Plaintiff complained to Anderson and Edison-Bethune principal Felecia Quarles that

17   James was stealing supplies.   Both refused to take action, pointing out that Plaintiff had signed

18   the delivery order.

19       In August 2007, a neighborhood resident reported seeing James loading supplies into his

20   vehicle after school hours.  In September 2007, Plaintiff verbally complained to his union

21   representative about the hazardous cleaning methods, sudden shortage of cleaning supplies,

22   Plaintiff's witnessing James loading boxes of supplies into his personal vehicle, and the unusual

23   increase in Plaintiff's work load beginning in May 2007.  As a result, the union representative

24   convened a grievance meeting attended by Plaintiff, James, and Quarrels to address Plaintiff's

25   complaints.  James was not reprimanded nor was he directed to modify the work safety

26   conditions and job duties about which Plaintiff had complained.

27       In September 2008, James drove behind a car driven by Plaintiff's wife.  When she

28   arrived at her destination, he gunned his engine before driving off.

Unable to diagnose Plaintiff's symptoms, in April 2009, Dr. Gurdeep Dillon referred Plaintiff to a new primary care doctor, Michael Lynch.  On October 20, 2009, Dr. Lynch referred Plaintiff to a specialist, Muhammed Sheik.  Dr. Sheik diagnosed Plaintiff with intractable hiccups, and provided a note to Defendant's Disability Benefits Department that Plaintiff would be unable to work from October 13, 2010 through July 11, 2011.  At a job modification meeting after Plaintiff began his medical leave, Plaintiff was advised that he needed to work an additional 30 days to qualify for retirement benefits.

In January 2011,  Dr. Rahim Raoufi confirmed that Plaintiff had suffered intractable and chronic hiccups for the past twelve years.  In a letter to Defendant's Human Resources and Labor Relations department, Dr. Raoufi reported:

> The patient has undergo extensive workup and also has more work to be done . . . We recommend that the patient . . . wears a mask and gloves as he works as custodian in contact with lost so waste [*sic*] material at an elementary school.  We recommend that he should avoid dust and working with disinfectant.  We also recommend that he should have a separate cushion and wear a mask if he is shampooing or vacuuming.  Overall, he should avoid contact with any chemical and dust as much as possible.

Doc. 9 at 33.

Dr. Raoufi did not clear Plaintiff to return to work before July 11, 2011.

Defendant called Plaintiff back to work in March 2011.  In meetings with the Job Modification Committee on March 24 and 31, 2011, personnel advised Plaintiff that he needed to work "just 30 more days" from March 31, 2011, to qualify for retirement.  Plaintiff alleges that his retirement date was to have been April 14, 2011, however, not 30 days after March 31, 2011.

On April 8, 2011, Plaintiff had surgery to the right side of his phrentic nerve block (right neck/throat area) and front chest area.

Plaintiff returned to work on April 12, 2011.  Defendant did not provide a face mask and required Plaintiff to continue to dust rooms and to lift book boxes up to 25 pounds.  Plaintiff suffered a stroke while working on April 12, 2011.  Plaintiff's physicians attributed the stroke to stress on the job site.  Plaintiff did not return to work thereafter.

On April 15, 2011, Plaintiff had surgery to the left side of his phrentic nerve block (left neck/throat area).

1       On May 20, 2011, Defendant's Human Resources and Labor Department advised

2  Plaintiff that, as of April 13, 2011, he was temporarily laid off and placed on Defendant's 39-

3  month re-employment list (R-39 status).  The letter noted that Plaintiff had exhausted all paid and

4  unpaid leaves of absence.

5       On August 30, 2011, Plaintiff filed a workers compensation claim, which was denied for

6  having been filed after the April 12, 2011 termination date of his employment by Defendant.

7       On or about September 1, 2011, Plaintiff discovered that Defendant had advised

8  Plaintiff's insurer, American Fidelity Insurance, that Plaintiff had resigned, and had advised

9  California Public Employees Retirement System (Cal-PERS) that Plaintiff had been terminated

10  on April 12, 2011.

11       On October 14, 2011, Plaintiff filed a grievance for wrongful termination in Defendant's

12  administrative office.  Also on October 13, 2012, Plaintiff filed an EEOC complaint for disability

13  discrimination and retaliation.  On November 29, 2011, Plaintiff filed a claim of retaliation and

14  disability discrimination with the California Department of Fair Employment and Housing.

15       On December 12, 2011, Plaintiff received a letter indicating that, as a result of his

16  resignation, he had been overpaid.

17       In January 2012, the Economic and Employment Development Office denied Plaintiff's

18  application for disability insurance since he was still receiving his full salary from Defendant.

19  On February 1, 2012,  Economic and Employment Development Office amended its

20  determination, finding that Plaintiff was eligible for disability insurance beginning November 1,

21  2011.

22       On March 15, 2012, Plaintiff completed all relevant disability retirement forms required

23  by CalPERS.  To date, Plaintiff has been unable to secure Defendant's required endorsement of

24  the forms, despite multiple requests by Plaintiff and CalPERS.  Defendant claims that it has

25  never received the forms sent to it by Plaintiff, CalPERS, or Fidelity.

26       On June 19, 2012, Plaintiff suffered another stroke.

27       In November 2012, CalPERS temporarily approved Plaintiff's disability retirement

28  benefits pending receipt of the forms signed by Defendant.

1    **III.    Cognizable Claim**

2          In determining whether a complaint fails to state a cognizable claim, a court applies

3    substantially the same standard applied in motions to dismiss pursuant to F.R.Civ.P. 12(b)(6).

4    *Gutierrez v. Astrue*, 2011 WL 1087261 at *1 (E.D.Cal. March 23, 2011) (No. 1:11-cv-00454-

5    GSA).   "The focus of any Rule 12(b)(6) dismissal . . . . is the complaint." *Schneider v.*

6    *California Department of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998).   A court must

7    dismiss a complaint, or portion of a complaint, for failure to state a claim upon which relief can

8    be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his

9    or her claim(s) that would entitle the plaintiff to relief.  *Hishon v. King & Spalding*, 467 U.S. 69,

10   73 (1984).   When a court reviews a complaint under this standard, it must accept as true the

11   complaint's allegations (*Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740

12   (1976)), construe the pleadings in the light most favorable to the plaintiff (*Resnick v. Hayes*, 213

13   F.3d 443, 447 (9th Cir. 2000)), and resolve all doubts in the plaintiff's favor (*Jenkins v.*

14   *McKeithen*, 395 U.S. 411, 421 (1969)).

15          **A.    Short and Plain Statement**

16          The sufficiency of a complaint is first determined by referring to F.R.Civ.P. 8(a) which

17   requires that a civil complaint contain:

18        (1)    a short and plain statement of the grounds for the court's jurisdiction,
             unless the court already has jurisdiction and the claim needs no new
19             jurisdictional support;

20        (2)    a short and plain statement of the claim showing the pleader is entitled to
             relief; and
21

22        (3)    a demand for the relief sought which may include relief in the alternative
             or different types of relief.

23           "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

24   exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).   The complaint must

25   "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon

26   which it rests." *Swierkiewicz*, 534 U.S. at 512.

27          The multiplicity of claims and the disorganized manner in which they are presented

28   makes it nearly impossible for the Court to state with certainty which occurrences gave rise to

                                                    6

which claim.  Certain allegations appear to contradict other facts.  As a result, the amended

complaint fails to give Defendant fair notice of each claim and the grounds upon which it rests.

Although this screening order attempts to evaluate Plaintiff's claims under applicable substantive

law, the Court has little confidence that is has correctly understood Plaintiff's allegations.

### B.   Principles of Pleading

#### 1.   Factual Allegations and Legal Conclusions

Determining a complaint's sufficiency invokes two underlying principles of pleading.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007).   First, the Court must accept as true the well-pleaded factual allegations of the

complaint.  *Twombly*, 550 U.S. at 555.  Detailed factual allegations are not required, but

"[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory

statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "Plaintiff must set forth sufficient factual

matter accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 677,

*quoting Twombly*, 550 U.S. at 555.

Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555 (*citations omitted*).  A plaintiff

must set forth "the grounds of his entitlement to relief," which "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action."  *Id.* at 555-56

(*internal quotation marks and citations omitted*).   In this case, Plaintiff clearly labeled his claims

but failed to provide sufficient factual allegations to allow the Court to evaluate whether the

claims are cognizable.

While factual allegations are accepted as true, legal conclusions are not.  *Iqbal*, 556 U.S.

at 678.  A court is "not bound to accept as true a legal conclusion couched as a factual

allegation."  *Id.*  "Nor is the court required to accept as true allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden

State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A legal conclusion is a statement such as: "The defendant has breached EEOC laws."

Reaching a legal conclusion is the Court's job.  The complaint should allege facts supporting

7

each element of the claim so that the Court can reach a legal conclusion.  A fact is a statement such as: "Employer advertised a supervisory job in March 1980"; "Plaintiff was diagnosed with multiple sclerosis in August 1991"; or "Plaintiff requires headphones to hear the telephone."

### 2. Plausible Claim for Relief

The second underlying principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.  To permit the Court to determine that a complaint states a plausible claim for relief, based on the reviewing court's judicial experience and common sense, the well-pleaded facts must permit the court "to infer more than a mere possibility . . . . 'that the pleader is entitled to relief.'" *Id.*, *quoting* F.R.Civ.P. 8(a)(2).  The Supreme Court explained:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

## IV. Rule 11

In light of the radical change in the alleged facts from the original complaint to the first amended complaint, Plaintiff is reminded of the provisions of F.R.Civ.P. 11, which provide:

> **Representations to the Court.**  By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

///

1
2
    (4)     the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

3
F.R.Civ.P. 11(b).

4
Violations of Rule 11(b) may subject the attorney, law firm, or party responsible for the

5
violation to sanctions, including non monetary directives, final penalties payable to the court, or

6
financial penalties payable to the opposing party for costs and attorneys' fees.  F.R.Civ.P. 11(c).

7
**V.**    **Defendants**

8
    **A.**    **Parties Alleged to Be "Liable"**

9
The complaint alleges that twelve individual employees and subdivisions of Defendant

10
are "liable": (1) James Marvin, supervisor of custodians; (2) Jean Anderson, office manager,

11
Edison-Bethune; (3) Felecia Quarrels, principal, Edison-Bethune; (4) De La Torre, head, FUSD

12
job modification committee; (5) Bob Nielson, head, FUSD job modification committee and

13
director, human resources; (6) Lisa Pandre, head, FUSD job modification committee; (7) Laurie

14
Chalda, head, FUSD job modification committee; (8) Tina Owens, FUSD workers compensation

15
specialist; (9) Ramirez, FUSD human resources; (10) FUSD Human Resources and Labor

16
Department; (11) FUSD Benefits Division; and (12) FUSD Administrative Department.  These

17
individuals and entities are not named as defendants.

18
The purpose of labeling these individuals and entities "liable" is unclear.  If Plaintiff

19
intends to prove liability and collect damages from each, he must name each such person or

20
entity as a defendant, clearly identify each claim for which he contends each named defendant is

21
liable, and allege facts sufficient to tie each defendant to each claim alleged against it.

22
Plaintiff also lists the names of persons or entities that he is not alleging are liable.  His

23
purpose in doing so is not clear. If his intent is to name witnesses, that will be appropriate at a

24
later stage of the proceedings.

25
    **B.**    **"John Doe" Defendants**

26
Although Plaintiff names as Defendants Does 1-20, the complaint does not allege any

27
claims against defendants whose names are unknown to Plaintiff.

28
///

The Federal Rules of Civil Procedure include no provision "permitting the use of fictitious defendants." *McMillan v. Department of Interior*, 907 F.Supp. 322, 328 (D.Nev. 1995), *aff'd*, 87 F.3d 1320 (9th Cir. 1996), *cert. denied*, 519 U.S. 1132 (1997).  *See also Fifty Associates v. Prudential Ins. Co. of Amer.*, 446 F.2d 1187, 1191 (9th Cir. 1970).  "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Nonetheless, a plaintiff must be afforded an opportunity to identify the unknown defendants through discovery, unless it is clear that discovery will not reveal their identities or the complaint must be dismissed for other reasons.  *Id.*  "While Doe pleading is disfavored, it is not prohibited in federal practice."  *Lopes v. Vieira*, 543 F.Supp.2d 1149, 1152 (E.D.Ca. 2008).

Although papers and pleadings submitted by *pro se* litigants are subject to a less stringent standard than those of parties represented by attorneys, a *pro se* plaintiff must follow the rules and orders of the Court, including diligently acting to identify any "John Doe" defendants named in her suit.  *Grinage v. Leyba*, 2008 WL 199720 at 12 (D. Nev. January 17, 2008) (No. 2:06-cv-0835-RLH-GWF).  When a plaintiff is not able to name one or more defendants when he files his complaint, he must provide sufficient information to enable the court and his opponents to know whom he is trying to identify.  *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 390 n. 2 (1971) (in which "the District Court ordered that the complaint be served upon 'those federal agents who it is indicated by the records of the United States Attorney participated in the November 25, 1965, arrest of the petitioner'"), and *Wakefield v. Thompson*, 177 F.3d 1160, 1162 n. 4 (9th Cir. 1999) (although the plaintiff did not know the name of the officer who refused to provide the plaintiff's prescription when releasing plaintiff on parole, the plaintiff informed the Court that the name could be secured "by inspecting the 'parole papers that the plaintiff signed at the time of his release' and the 'Duty Roster for that day.'")  Here, Does 1-20 are not otherwise identified or linked to any specific act or omission.  If Plaintiff intends to include the Doe Defendants in his amended complaint, Plaintiff must tell us what each Doe did and why Plaintiff is suing him, even if Plaintiff is not yet able to identify that Doe by name.

///

10

1    **VI.**    **Disability Discrimination**

2            Plaintiff alleges that Defendant violated the Americans With Disabilities Act (42 U.S.C. §

3    12101 *et seq.*) (ADA) by forcing him to endure a hostile work environment and wrongfully

4    terminating his employment.  The ADA prohibits an employer from discriminating against a

5    qualified individual with a disability because of that disability.  42 U.S.C. § 12112(a).

6            To state a cognizable claim of disability discrimination, a plaintiff must allege "(1) that he

7    is a disabled person within the meaning of the statute; (2) he is a qualified person with a

8    disability; and (3) he suffered an adverse employment action because of his disability." *Hutton v.*

9    *Elf Atochem North America, Inc.*, 273 F.3d 884, 891 (9th Cir. 2001).  When a plaintiff has

10   established these three elements, the burden shifts to the defendant to offer a legitimate, non-

11   discriminatory reason for the adverse action.  *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir.

12   1990).

13           A qualified person with a disability is "an individual with a disability who, with or

14   without reasonable accommodation, can perform the essential functions of the employment

15   position that such individual holds or desires."  42 U.S.C. § 1211(8).  A totally disabled person

16   who cannot perform the position's essential functions with or without reasonable accommodation

17   is not qualified to sue.  *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).  A plaintiff

18   bears the burden of proving that he is qualified.  *Weyer v. Twentieth Century Fox Film Corp.*,

19   198 F.3d 1104, 1108 (9th Cir. 2000).  According to the amended complaint, Plaintiff's physician

20   opined that Plaintiff was unable to work from October 13, 2010, through July 11, 2011.  Because

21   Plaintiff could not perform the position's essential functions, with or without accommodation, on

22   April 12, 2011, he was not a qualified person with a disability and was not entitled to ADA

23   protection from discrimination.

24           Even if Plaintiff were a qualified individual with a disability, the complaint itself alleges

25   a legitimate, nondiscriminatory basis for Plaintiff's discharge.  Throughout his employment,

26   Plaintiff used both paid and unpaid leave for periodic doctor visits.  In March 2011, despite his

27   ongoing medical leave, Defendant called Plaintiff back to work, advising him that he required

28   thirty additional days of work to qualify for retirement benefits.  On April 12, 2011, four days

after undergoing surgery, Plaintiff returned to work.  On his first day back, Plaintiff suffered a stroke.  Thereafter, Defendant "laid off" Plaintiff, indicating that he had exhausted all his available paid and unpaid leave.  These facts indicate that Plaintiff was not discharged because of his disability, but because he was absent from work without any available leave time.  The amended complaint fails to allege a cognizable claim for wrongful discharge.

Nor does the complaint allege a cognizable claim that the Defendant violated the ADA by subjecting Plaintiff to a hostile work environment, even if Plaintiff were a qualified individual with a disability.  To establish a disability harassment claim, a plaintiff must allege that (1) he was subjected to verbal or physical conduct because of his disability; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe to alter the conditions of his employment and create an abusive work environment.   *See Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1066 (9th Cir. 2002), *cert. denied*, 538 U.S. 922 (2003); *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 817 (9th Cir. 2002).   Assuming that James's imposition of hazardous cleaning procedures, modification of Plaintiff's cleaning responsibilities, and stalking of Mrs. Brown constituted harassment, the complaint alleges no instances in which Plaintiff was subjected to abusive conduct as a result of his disability.  Instead, Plaintiff alleges that he was harassed after he accused James of stealing cleaning supplies and refused to follow James's direction to sign delivery receipts.

The complaint fails to state a cognizable claim for harassment under the ADA.  If Plaintiff elects to file a second amended complaint, as this order permits him to do, he may not include ADA claims for harassment, a hostile work environment, or wrongful discharge.

**VII.**   **Retaliation for Reporting James's Alleged Misbehavior**

Plaintiff also alleges that he was subjected to a hostile work environment and retaliation in violation of Title VII as a result of his reporting James's theft of cleaning supplies in 2007.  As with his claims of disability harassment, Plaintiff alleges that the harassment took the form of James's requiring Plaintiff to use a hazardous cleaning procedure, assigning Plaintiff a disproportionate share of the work load, and stalking and threatening Plaintiff's wife.  This claim is untimely.

1    The statute of limitations for a Title VII claim is the time period for personal injury torts

2 under state law.  *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  In California, such a claim must

3 be brought within two years.  California Code of Civil Procedure § 335.1.  Because Plaintiff did

4 not file this action until September 28, 2012, he may not proceed with this claim.

5 **VIII.   Breach of Contract**

6    Alleging that Defendant breached the collective bargaining agreement with SEIU under

7 which Plaintiff was employed, Plaintiff contends that 29 U.S.C. § 185(a) grants him standing to

8 enforce the collective bargaining agreement in its application to himself.  Plaintiff is incorrect.

9 The statutory provision provides federal jurisdiction of "contracts between an employer and *a*

10 *labor organization representing employees in an industry affecting commerce*."  29 U.S.C. § 185

11 (a) (*emphasis added*).  Federal question jurisdiction is not afforded to employment cases in which

12 a single employee is suing individually on his or her own behalf.  *Giba v. International Union of*

13 *Electric, Radio and Machine Workers, AFL-CIO*, 205 F.Supp. 553, 556 (D.Conn. 1962).

14 Accordingly, Plaintiff may not pursue federal claims that Defendant breached the collective

15 bargaining agreement between his union and Defendant.

16 **IX.   Unsafe Workplace**

17    Plaintiff alleges that Defendant violated the Occupational Safety and Health Act (OSHA)

18 by failing to provide a workplace free of recognized standards.  Individual workers generally lack

19 standing to bring an OSHA enforcement action.  The statute provides that, if an employee or his

20 representative believe that violation exists that threatens harm or creates immediate danger, they

21 may request an OSHA inspection by notice to the Secretary of Labor or the Secretary's

22 authorized representative.  29 U.S.C. § 657 (f)(1).  *See, generally*, *Whirlpool Corp. v. Marshall*,

23 445 U.S. 1, 9 (1980).  If the inspection reveals hazardous conditions as set forth in the act, the

24 inspector must inform the employer and employees of the danger and that he is recommending

25 that the Secretary pursue injunctive relief.  29 U.S.C. § 662(a).  An individual employee has

26 standing to pursue injunctive relief only if the Secretary arbitrarily or capriciously fails to take

27 action.  29 U.S.C. § 662(f).

28 *///*

1    Because Plaintiff did not follow the statutory procedure of requesting an OSHA

2    inspection and because Plaintiff seeks money damages, not injunctive relief, the unsafe

3    workplace claim is not cognizable.

4    **X.    Fair Labor Standards Act**

5        Plaintiff alleges that Defendant's record keeping violated the record keeping regulations

6    under the Fair Labor Standards Act: 29 C.F.R. § 516.2(a)(5)-(8).  Because the nature of the

7    alleged violation and the manner in which it harmed Plaintiff is not clear from the complaint, the

8    Court is unable to evaluate whether Plaintiff has stated a cognizable claim for violation of the

9    Fair Labor Standards Act.

10   **XI.   State Claims**

11       **A.    Jurisdiction Over California State Claims**

12       Section 1983 does not provide a federal cause of action for violations of state law.  *See*

13   *Weilburg v. Shapiro*, 488 F.3d 1202, 1207 (9th Cir. 2007)*; Galen v. County of Los Angeles*, 477

14   F.3d 652, 662 (9th Cir. 2007); *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada*

15   *County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997); *Lovell v. Poway Unified School Dist.*, 90

16   F.3d 367, 370 (9th Cir. 1996); *Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986); *Ybarra v.*

17   *Bastian*, 647 F.2d 891, 892 (9th Cir.), *cert. denied*, 454 U.S. 857 (1981).  Pursuant to 28 U.S.C. §

18   1367(a), however, in any civil action in which the district court has original jurisdiction, the

19   district court "shall have supplemental jurisdiction over all other claims in the action within such

20   original jurisdiction that they form part of the same case or controversy under Article III," except

21   as provided in subsections (b) and (c).  "[O]nce judicial power exists under § 1367(a), retention

22   of supplemental jurisdiction over state law claims under 1367(c) is discretionary."  *Acri v. Varian*

23   *Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).  "The district court my decline to exercise

24   supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed

25   all claims over which it has original jurisdiction."  28 U.S.C. § 1367 (c)(3).  The Supreme Court

26   has cautioned that "if the federal claims are dismissed before trial . . . the state claims should be

27   dismissed as well."  *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966).

28   ///

1  Accordingly, should Plaintiff fail to allege a cognizable federal claim, this Court will decline to

2  assume jurisdiction of his state claims.

3     **B.     Government Claims Act**

4        The complaint does not allege compliance with the Government Claims Act.  The

5  Government Claims Act requires that a tort claim against a public entity or its employees be

6  presented to the California Victim Compensation and Government Claims Board no more than

7  six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-

8  950.2 (West 2011).  Presentation of a written claim, and action on or rejection of the claim are

9  conditions precedent to suit.  *Shirk v. Vista Unified Sch. Dist.*, 42 Cal.4th 201, 208-09 (2007);

10 *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1239 (2004); *Mabe v. San*

11 *Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001); *Mangold v.*

12 *California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  To state a tort claim against

13 a public employee or entity, a plaintiff must allege compliance with the Government Claims Act.

14 *Shirk*, 42 Cal.4th at 209; *Bodde*, 32 Cal.4th at 1239; *Mangold*, 67 F.3d at 1477; *Karim-Panahi v.*

15 *Los Angeles Police Dept.*, 839 F.2d 621, 627 (9th Cir. 1988).

16       In addition, to the extent that Plaintiff seeks to pursue tort claims under California law,

17 the Government Claims Act requires exhaustion of those claims with the California Victim

18 Compensation and Government Claims Board, and Plaintiff is required to specifically allege

19 compliance in his complaint.  *Shirk*, 42 Cal.4th at 208-09 (2007); *Bodde*, 32 Cal.4th at 1239;

20 *Mabe*, 237 F.3d at 1111; *Mangold*, 67 F.3d at 1477; *Karim-Panahi*, 839 F.2d at 627.

21    **C.     Fraud and Negligent Misrepresentation**

22       Plaintiff contends that Defendant is liable for negligent or intentional misrepresentation in

23 its failure to sign his disability retirement and to keep accurate records of his wages and work

24 hours.  He reasons that Defendant's behavior satisfied the California Civil Code § 1709, which

25 provides," Tortious fraud or deceit occurs when a party willfully deceives another with the intent

26 to induce him to alter his position to his injury or risk."  In support of his claims, he refers the

27 reader to the facts set forth in paragraphs 46-48, 54-60, 63-69, 71-73, and 75-86 of the complaint.

28 ///

1    To allege a cognizable claim for negligent misrepresentation, a plaintiff must allege facts

2    sufficient to establish (1) a misrepresentation of a past or existing material fact, (2) without

3    grounds for believing it to be true, (3) with the intent to induce another's reliance, and (4)

4    justifiable reliance by a party who was ignorant of the truth.  *B.L.M. v. Sabo & Deitsch*, 55

5    Cal.App.4th 823, 234 (1997).  To allege a cognizable claim of fraudulent misrepresentation, a

6    plaintiff must allege sufficient facts to establish (1) misrepresentation, which encompasses false

7    representation, concealment, and nondisclosure; (2) knowledge of falsity; intent to defraud; (4)

8    justifiable reliance; and (5) damage.  *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). All

9    elements must be present and the absence of any one element is fatal to recovery.  *Okun v.*

10   *Morton*, 203 Cal.App.3d 805, 828 (1988).

11   In addition to the general pleading requirements set forth in F.R.Civ.P. 8, when a plaintiff

12   alleges fraud, he or she must allege "with particularity the circumstances constituting fraud."

13   F.R.Civ.P. 9(b).  The pleading must be "specific enough to give defendants notice of the

14   particular misconduct . . . . . that they can defend against the charge and not just deny they have

15   done anything wrong."  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010),

16   *quoting Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (*internal quotation*

17   *marks omitted*).  The Ninth Circuit applies this pleading standard to claims of both intentional

18   and negligent misrepresentation since both are varieties of fraud in California.  *Meridian Project*

19   *Systems, Inc. v. Hardin Construction Co., LLC*, 404 F.Supp.2d 1214, 1219-20 (E.D.Cal. 2005).

20   The factual paragraphs to which Plaintiff refers include allegations regarding the

21   ambiguity of Plaintiff's status following his stroke and departure from work on April 12, 2011:

22   Plaintiff contends that on various occasions, Defendant characterized him as laid off and on the

23   recall list, terminated, or resigned.  Defendant also misrepresented to Plaintiff and to the

24   Employment Development Department that it had overpaid Plaintiff's wages.  As a result,

25   Plaintiff was denied workers' compensation and disability benefits.  Plaintiff also alleges that, to

26   be eligible for retirement, Defendant required that he work thirty days after March 30, 2011, even

27   though Plaintiff's retirement date was to have been April 14, 2011.  Plaintiff alleges that he filed

28   ///

1    multiple grievances relating to the alleged facts, but does not allege the outcome of those

2    grievance proceedings.

3           Although the complaint alleges bureaucratic confusion, whether or not Plaintiff can allege

4    a cognizable claim of negligent or intentional misrepresentation is not clear.  The allegations lack

5    the specificity needed to identify each specific instance of Defendant's misconduct.  In addition,

6    the allegations indicate that Plaintiff did not rely on the alleged misrepresentations but knew

7    them to be false.  In the second amended complaint, Plaintiff must transform the confused

8    account of the facts relating to this claim to clear, sequential allegations indicating each element

9    of the claimed torts.

10   **XII.    Conclusion and Order**

11          Because the complaint fails to allege facts sufficient to state a claim upon which relief can

12   be granted, this Court will dismiss it. The Court will provide Plaintiff with the opportunity to file

13   a second amended complaint curing the deficiencies identified by the Court in this order.

14   Plaintiff must revise his complaint to allege facts sufficient to support a cognizable claim.

15   Should the second amended complaint fail to allege a cognizable claim, no additional

16   opportunities to revise the complaint will be provided.

17          Plaintiff's amended complaint should be brief, but must allege sufficient facts to establish

18   each cause of action (claim). Fed. R. Civ. P. 8(a).  Plaintiff should focus on setting forth, as

19   briefly but specifically as possible, the facts necessary to establish each element of the claim.

20   Plaintiff is encouraged to omit legal conclusions and irrelevant facts, and to organize his

21   allegations in an logical manner.

22          Plaintiff is reminded that the second amended complaint will supercede all his prior

23   complaints, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *aff'd*, 525 U.S. 299

24   (1999); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself

25   without reference to the prior or superceded pleading."  Local Rule 15-220.  "All causes of action

26   alleged in an original complaint which are not alleged in an amended complaint are waived."

27   *King*, 814 F.2d at 567; *accord Forsyth*, 114 F.3d at 1474.

28   ///

Based on the foregoing, it is HEREBY ORDERED that:

1.      Plaintiff's complaint is dismissed with leave to amend for failure to allege facts sufficient to state a claim on which relief may be granted.

2.      Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order.

3.      Plaintiff may not re-allege claims alleging violation of the Americans With Disabilities Act (ADA), the allegedly discriminatory acts committed in 2007, claims alleging violation of the Occupational Safety and Health Act (OSHA), or breach of the collective bargaining agreement between Defendant and SEIU.

4.      If the second amended complaint fails to state a cognizable claim, this case will be dismissed with prejudice. The Court will provide no further opportunities to amend.

5.      If Plaintiff fails to file a second amended complaint within **thirty (30) days** from the date of service of this order, this action will be **dismissed with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim.

IT IS SO ORDERED.

**Dated:    January 26, 2013                            /s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE