UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORACE CHESTER BROWN, JR., | CASE NO. 1:12-cv-01597-AWI-SMS |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THIS CASE BE DISMISSED FOR LACK OF JURISDICTION |
| v. | |
| FRESNO UNIFIED SCHOOL DISTRICT, | (Doc. 12) |
| Defendant. | |

### Third Screening Order

Plaintiff Horace Chester Brown, Jr., proceeding *in forma pauperis*, filed his second amended complaint on February 25, 2012. Because Plaintiffs' complaint fails to state a federal claim upon which relief can be granted, the undersigned recommends that the Court dismiss it.

**I.   Screening Requirement**

The Court must screen any case in which a plaintiff proceeds *in forma pauperis*. 28 U.S.C. § 1915. It must dismiss any case, regardless of the fee paid, if the action or appeal is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B).

**II.   Summary of Alleged Facts**[1]

Plaintiff (born March 15, 1956) began work as a custodian for Defendant on June 21, 1999. While employed by Defendant, Plaintiff was a member of Service Employees International Union (SEIU) and subject to the terms of a collective bargaining agreement. Plaintiff's compensation included medical insurance. Plaintiff also purchased through Defendant subsidized disability

---

[1] Plaintiff has again substantially modified his factual allegations in the second amended complaint.

1

1  insurance from American Fidelity Insurance Company.  Defendant owns American Fidelity
2  Insurance Company.
3       On or about March 1, 2000, Plaintiff began to show symptoms of severe acid reflux,
4  tightened chest and airways, gagging, and signs of heart attacks.  On or about May 1, 2000, Plaintiff
5  had his first appointment with his primary care physician, Dr. Sandhu at Northwest Medical Group.
6  From May 1, 2000, until the end of his employment in April 2011, Plaintiff was treated by several
7  physicians and specialists.  Plaintiff always notified Defendant of his absences for doctors'
8  appointments, first exhausting his sick and vacation days to do so, and eventually taking time off
9  without pay.
10      In October 2010, medical specialist Muhammed Shied notified Defendant's disability
11 benefits department that Plaintiff would be unable to work from October 13, 2010 through July 11,
12 2011.  In January 2011,  Dr. Rahim Raoufi confirmed that Plaintiff had suffered intractable and
13 chronic hiccups for the past twelve years.  In a letter to Defendant's Human Resources and Labor
14 Relations department, Dr. Raoufi reported:
15      The patient has undergo extensive workup and also has more work to be done . . . We recommend that the patient . . . wears a mask and gloves as he works as custodian in
16      contact with lost so waste [*sic*] material at an elementary school.  We recommend that he should avoid dust and working with disinfectant.  We also recommend that
17      he should have a separate cushion and wear a mask if he is shampooing or vacuuming.  Overall, he should avoid contact with any chemical and dust as much
18      as possible.
19      Doc. 12 at 36.
20 Dr. Raoufi did not clear Plaintiff to return to work before July 11, 2011.
21      Defendant called Plaintiff back to work in March 2011.  In meetings with the Job
22 Modification Committee on March 24 and 31, 2011, personnel advised Plaintiff that he needed to
23 work "just 30 more days" from March 31, 2011, to qualify for retirement.  Later, Plaintiff learned
24 that his correct retirement date would have been April 14, 2011.
25      Relying on the information that the Job Modification Committee provided, Plaintiff returned
26 to work on April 12, 2011, and suffered a stroke the same day.  Plaintiff's physicians attributed the
27 stroke to stress on the job site.  Plaintiff did not return to work thereafter.
28 ///

On May 20, 2011, Defendant's Human Resources and Labor Department advised Plaintiff that, as of April 13, 2011, he was temporarily laid off and placed on Defendant's 39-month re-employment list (R-39 status). On August 30, 2011, Plaintiff filed a workers compensation claim, which was denied for having been filed after the April 12, 2011 termination date of his employment by Defendant. On or about September 1, 2011, Plaintiff discovered that Defendant had advised Plaintiff's insurer, American Fidelity Insurance, that Plaintiff had resigned, and had advised California Public Employees Retirement System (Cal-PERS) that Plaintiff had been terminated on April 12, 2011.

In October 2011, Plaintiff filed a grievance for wrongful termination in defendant's administrative office. On October 13, 2012, Plaintiff filed an EEOC complaint for disability discrimination and retaliation. On November 29, 2011, Plaintiff filed a claim of retaliation with the California Department of Fair Employment and Housing.

On December 12, 2011, Plaintiff received a letter indicating that, as a result of his resignation, he had been overpaid.

In January 2012, the Economic and Employment Development Office denied Plaintiff's application for disability insurance and unemployment benefits since he was still receiving his full salary from Defendant.

**VII.    Retaliation for Reporting James's Alleged Misbehavior**

The second amended complaint alleges that Plaintiff was subjected to a hostile work environment and retaliation as a result of Plaintiff's complaints of hazardous work conditions and allegations that his supervisor, Marvin James, stole cleaning supplies from Defendant. Because the second amended complaint omits the factual allegations relating to Plaintiff's 2007 conflicts with James, inclusion of this claim appears to be a drafting oversight. In the second screening order, the Court determined that because the hostile work environment and retaliation claims were untimely, Plaintiff could not proceed not proceed with those claims.

///

///

///

**XI.    State Claims**

Plaintiff's only remaining claims are multiple forms of negligence and fraud under common law and California statutes. In the absence of diversity or a federal question, this Court has no jurisdiction over any of these claims.

**XII.   Conclusion and Order**

Because the complaint fails to allege facts sufficient to state a federal claim upon which relief can be granted, the undersigned recommends that the Court dismiss this case for lack of jurisdiction.

These findings and recommendations are submitted to District Judge Anthony W. Ishii pursuant to 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72-304. Within thirty (30) days of service of these findings and recommendations, Plaintiff may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review these findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

The parties are advised that failure to file objections within the specific time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: 3/6/2013                             /s/ SANDRA M. SNYDER
                                            UNITED STATES MAGISTRATE JUDGE
                                            EASTERN DISTRICT OF CALIFORNIA